IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ANANA RAZUMNY ROBERTS,                          Civ. No. 6:15-cv-01460-CL

       Plaintiff,

       v.

**REPORT AND
RECOMMENDATION**

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

CLARKE, Magistrate Judge.

       Plaintiff Anana Razumny Roberts ("Roberts") seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g), and reviews to determine that the Commissioner's decision was based upon substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Commissioner's decision should be affirmed for the reasons that follow.

///

///

Page 1 – **REPORT & RECOMMENDATION**

## ANALYSIS

The Commissioner makes disability determinations under the Act using a prescribed regulatory five-step analysis. 20 C.F.R. § 416.920(a)(4). Each step is potentially dispositive. *Id.* Ms. Roberts alleges the Commissioner's administrative law judge ("ALJ") erred by (1) finding her cervical degenerative disc disease "nonsevere" at step two in the sequential proceedings; (2) failing to find her impairments "equaled" regulatory listings establishing disability at step three; (3) improperly rejecting testimony proffered by Ms. Roberts, a physical therapist, and her mother; (4) erroneously formulating a "residual functional capacity" describing her workplace abilities; and (5) submitting an incomplete hypothetical to a vocational expert testifying at her administrative hearing at step five. Ms. Roberts asserts that, but for these errors, she has established disability. Ms. Roberts bears the burden of establishing error, and this court may not reverse an ALJ's decision "on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations omitted).

### I.    Step Two Severity Finding

Ms. Roberts asserts that the ALJ should have found her cervical degenerative disc disease "severe" at step two in the sequential analysis. Pl.'s Op. Br., 10 (Dkct. # 12). The ALJ's step two findings address medical "severity" only, 20 C.F.R. § 416.920(a)(4)(ii). To be deemed "severe," the alleged impairment must also significantly limit one's ability to perform basic work activities. 20 C.F.R. § 416.921(a). However, the ALJ's subsequent analysis must consider all of a claimant's medically-established impairments, both severe and non-severe. 20 C.F.R. § 416.945(a)(2); *see* also § 416.923. The Ninth Circuit consequently instructs that an ALJ's failure to address an impairment at step two is harmless if the ALJ's later findings discuss the matter. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *but see Webb v. Barnhart*, 433 F.3d 683, 688

(9th Cir. 2005) (finding error in step two omission where the claimant presented evidence that ALJ improperly omitted later in the analysis).

Here, the ALJ's step two findings discussed diagnostic imaging studies pertaining to Ms. Roberts' cervical spine. Admin. R. 33. The ALJ's later findings limited Ms. Roberts' pushing, pulling, and reaching overhead. *Id.* at 34. Ms. Roberts does not now articulate further limitation stemming from her cervical spine impairment, regardless of medical evidence discussed at step two. Any omissions are therefore harmless.

## II.     Step Three Listing Analysis

The ALJ stated that Ms. Roberts' impairments did not meet or equal a listed impairment. Admin. R. 33.     Ms. Roberts asserts that the ALJ erroneously found that her combined impairments did not "equal" a listing at step three of the sequential analysis; she distinguishes that her argument does not address "meeting" a listing at this juncture. Pl.'s Op. Br. 11.  She does not clearly indicate what impairment she asserts or discuss supporting evidence; instead she points broadly by number to Listings 14.06B, 14.09D, and 12.06. *Id.* at 12.  These regulatory citations respectively address connective tissue disorders (s14.06B), inflammatory arthritis (s14.009D), and anxiety (s12.06).

The claimant bears the burden of establishing disability at step three. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Error is harmless if the ALJ discusses the alleged impairment at a later step in the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2001).

Under the regulations, an impairment is "medically equivalent" to a regulatory listing at step three "if it is at least equal in severity and duration to the criteria of any listed impairment." 20

Page 3 – **REPORT & RECOMMENDATION**

C.F.R. § 416.926(a). Application of this rule is limited. The Commissioner may determine that an impairment "equals" an impairment listed its regulations in one of three specified instances: (1) the claimant has a "listed" impairment, but does not exhibit one or more relevant specified findings; (2) the claimant has a "listed" impairment but relevant findings are "not as severe" as the regulations specify; or (3) the claimant has a combination of impairments and no single one meets a listed impairment. 20 C.F.R. § 416.926(b). The Supreme Court further instructs that "for a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1989) (citing 20 C.F.R. s 416.926(a)) (superseded by statue on other grounds as noted by *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (internal citations omitted)). Further, the Ninth Circuit finds step three arguments foreclosed where a claimant relies upon overall functional impact rather than a demonstration of equivalence to each regulatory prong of a listing. *Kennedy*, 738 F.3d at 1176

Ms. Roberts does not specifically discuss the ALJ's alleged step three errors, or her own impairments, under these standards. Here, the ALJ proceeded beyond step three of the sequential disability analysis and directly addressed Ms. Roberts' fibromyalgia and fatigue symptoms impairments in discussion pertaining to her RFC assessment. Admin. R. 34-37. Ms. Roberts, therefore, does not establish reversible error at step three pertaining to fibromyalgia or chronic fatigue syndrome impairments in relation to §§ 14.06B and 14.09D.

Ms. Roberts also indicates the ALJ should have discussed Listing 12.06, which encompasses "anxiety related disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. At step two, the ALJ found that Ms. Roberts "has no established medically determinable mental health impairment."

Page 4 – **REPORT & RECOMMENDATION**

Admin. R. 33. Step three determinations are based upon medically-established impairments deemed severe at step two. 20 C.F.R. § 416.926; *Burch*, 400 F.3d at 683; *see* also *Kennedy*, 738 F.3d at 1175. The Ninth Circuit affirms that an ALJ does not error in omitting discussion of a medically-established impairment at step three where the claimant presents no evidence of she meets or equals a listed impairment. *Id.* Ms. Roberts does not challenge this finding, nor does her argument point to evidence in the record on this point. Because the ALJ's analysis is sequential, the ALJ was obliged to consider Ms. Roberts' global impairments, including those deemed nonsevere, in addressing her RFC. 20 C.F.R. § 416.945(a)(2). Ms. Roberts therefore fails to establish reversible error pertaining to Listing 12.06 at step three.

## III.    Evaluation of Testimony

### A.  Claimant's Testimony

Under the regulations, the ALJ evaluates a claimant's testimony in formulating the claimant's "residual functional capacity" ("RFC") between steps three and four of the sequential analysis. 20 C.F.R. § 416.945(a)(5). The ALJ must consider a claimant's statements regarding her symptoms. 20 C.F.R. § 416.929(a). This analysis is individualized, 20 C.F.R. § 416.945 (e), but pain and functional limitation must be related to a medically determinable impairment. 20 C.F.R. § 416.929(b).

The Ninth Circuit further directs a two-step process in evaluating a claimant's testimony. First, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, absent evidence of

Page 5 – **REPORT & RECOMMENDATION**

malingering, the ALJ may reject a claimant's testimony to the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Such findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Ms. Roberts asserts that the ALJ erroneously cited objective medical evidence, her activities of daily living, and her work history, and that the ALJ failed to consider the Commissioner's administrative rulings pertaining to fibromyalgia and symptom testimony. Pl.'s Op. Brief, p.17-25 (Dckt. #12).

## 1. Medical Evidence

The ALJ generally discussed Ms. Roberts' medical evidence at some length. Admin. R. at 34-36. The Commissioner's regulations and administrative rulings permit citation to the medical record in evaluating symptom testimony, specifically allowing consideration of the "extent to which your symptoms can reasonably be accepted as consistent with objective medical evidence, and other evidence." 20 C.F.R. § 416.929(a). The Commissioner clearly instructs that the ALJ's credibility analysis may also consider the longitudinal medical history, and "medical signs and laboratory findings." Soc. Sec. Ruling 96-7p at *5, 7 (available at 1996 WL 374186). But, the ALJ may not reject symptom testimony "solely" because medical evidence alone does not corroborate the degree of symptom severity. *Bunnell*, 947 F.3d at 345 (*en banc*).

Ms. Roberts specifically objects to the ALJ's statement that her pain and fatigue complaints "exceed objective and physical exam findings." Pl.'s Op. Br. 19 (citing Admin. R. 35). However, her challenge to the ALJ's discussion of medical evidence in evaluating her

Page 6 – **REPORT & RECOMMENDATION**

credibility points only to evidence relating to her alleged cervical disc impairment. Pl.'s Op. Br., 19. But, she later submits that this impairment is irrelevant to discussion of her testimony because the ALJ's step two analysis is limited to medically determinable impairments. Pl.'s Reply, p. 8 (Dckt. #17). As noted above, the ALJ must consider all of a claimant's impairments, both severe and non-severe, in proceeding past step two of the sequential analysis. Because the ALJ limited Ms. Roberts to occasional overhead reaching (Admin. R. 34), and Ms. Roberts does not assert further limitation due to her cervical disc issues, any error pertaining to medical evidence and cervical disc limitations in evaluating her testimony is harmless.

Ms. Roberts also asserts, broadly, that the ALJ did not address the Commissioner's administrative rulings pertaining to fibromyalgia and chronic fatigue syndrome. Pl.'s Op. Br. 19. She does not, however, identify error made by the ALJ pertaining to medical evidence and her credibility at this juncture. The Court therefore turns to the ALJ's subsequent credibility findings.

Finally, Ms. Roberts infers that the ALJ failed to apply the Commissioner's administrative rulings pertaining to fibromyalgia and chronic fatigue syndrome. Pl.'s Op. Br. 19-20. While she quotes these materials at considerable length, and notes the ALJ's comment that her complaints exceed "objective and physical exam findings," Ms. Roberts does not establish that the ALJ improperly relied upon this rationale alone for rejecting her associated symptom testimony. The court, therefore, turns to the remaining credibility issues under review.

### 2. Activities of Daily Living

Regarding her activities of daily living, the ALJ noted Ms. Roberts' testimony that she plays ipad games, is unable to knit or sew, and performs daily activities such as preparing breakfast and lunch, feeding animals, and sporadically completing chores such as laundry and

Page 7 – **REPORT & RECOMMENDATION**

shopping. Admin R. 34. Later, the ALJ noted Ms. Roberts' reports of performing "minor repairs, and gardening" and her mother's reports that she prepares meals, completes chores, and shops. *Id.* at 36.

The ALJ's credibility analysis may cite activities of daily living in conjunction with other factors such as frequency and intensity of reported symptoms, medication and its effects, and treatment utilized. 20 C.F.R. § 416.929(c)(3). But, such reasons must be "sufficiently specific to permit the reviewing court that the ALJ did not arbitrarily discredit the claimant's testimony." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ's citation to Ms. Roberts' activities is consistent with this standard. Where an ALJ's analysis is open to more than one plausible interpretation, the reviewing court must affirm the ALJ's findings if they are reasonable and supported by substantial evidence. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). Though Ms. Roberts asserts that her activities were "sharply circumscribed" and "performed only sporadically," Pl.'s Op. Br. 24, the ALJ's analysis is sufficient under the standard above.

The ALJ's citation to Ms. Roberts' hopes to become a parent, however, falls afoul of this standard. Here, the ALJ noted three times that Ms. Roberts "started trying to have a child." *Id.* at 34, 36. The ALJ also questioned Ms. Roberts on the matter at some length in the course of the administrative hearing. *Id.* at 56-59. This is entirely speculative; furthermore, while Courts have upheld an ALJ's citation to childcare activities as inconsistent with disability, *Rollins*, 261 F.3d at 857, no authority suggests parenthood itself, much less aspiring to parenthood, is inconsistent with disability. This reasoning should not be sustained.

///

///

Page 8 – **REPORT & RECOMMENDATION**

### 3. Work History and Secondary Gain

Finally, Ms. Roberts challenges the ALJ's citation to her own reports of her work history. Pl.'s Op. Br. 21. The ALJ reviewed Ms. Robert's employment history, and noted her statement that she looked for work "a couple of times." Admin R. 34. The ALJ inferred that these statements were contradictory, noting Ms. Roberts' testimony that she last looked for work in 1997 and her testimony that she last worked in 1999. *Id.* While an ALJ may consider claimant's inconsistent or poor work history, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), this alone does not suffice. The ALJ may not discredit a claimant based upon a failed work attempt. *Lingenfelter*, 504 F.3d 1037. The ALJ's reasoning on this point, therefore, should also not be sustained.

The ALJ also stated, "I noted possible secondary gain motive" based upon Ms. Roberts' application for benefit payments. *Id.* at 36. The Commissioner now asserts that "secondary gain is an acknowledged credibility factor." Def.'s Br., 11 (Dckt. #13). Her first citation points to review of a record where medical providers directly stated secondary gain concerns arose. *Gallant v. Heckler*, 753 F.2d 1450, 1458-59 (9th Cir. 1984). That is not presently the case. The Commissioner's second citation addresses work history and does not directly address secondary gain, *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), and her third citation addresses neither. *Matney v. Sullivan*, 981 F.3d 1016, 1020 (9th Cir. 1992).

The Ninth Circuit rejects secondary gain inferred from the act of disability benefit application as a basis for finding a disability claimant not credible. This is because "it is difficult to see how any claimant could be found credible under that reasoning." *Reinertson v. Barnhart*, 127 Fed. Appx. 285, 289 (9th Cir. 2005)(not reported). Further, this Court has long

Page 9 – **REPORT & RECOMMENDATION**

declined to endorse such reasoning. *Ratto v. Sec., Dept. Health and Human Servs.*, 839 Fed.Supp. 1415, 1428-29 (D. Or. 1993); *see* also *Altorfer v. Colvin*, No. 3:14-cv-01933-HZ at \*8 (D. Or. 2014) (available at 2015 WL 9255544). It will not do so now.

### 4. Conclusion

In summary, the reviewing court need not sustain an ALJ's credibility determination in its entirety. *Batson*, 359 F.3d at 1197. Here, the ALJ adequately cited Ms. Roberts' medical record and reports of her daily activities. While the issues discussed by the ALJ may be open to variable interpretations, this Court must sustain inferences reasonably drawn. *Rollins*, 261 F.3d at 857. Therefore, the ALJ's citation to Ms. Roberts' medical record and activities of daily living, except as noted, is sufficient to sustain her finding that Ms. Roberts' symptom testimony was "not entirely credible."

### B. Physical Therapist John Breuer

The regulations define a physical therapist as a lay, or "other" source, as opposed to an "acceptable medical source." 20 C.F.R. § 416.914(d)(1); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Commissioner has promulgated an advisory opinion instructing evaluation of such sources. SSR 06-3p (*available at* 2006 WL 2329939). It states that other sources cannot establish the existence of a medically determinable impairment, but may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at \*2. In evaluating an "other" source opinion, the ALJ may consider its consistency with other evidence, its relevance, how well the source explains the opinion, whether the source has expertise related to the impairment, and "any other factors that tend to support or refute the opinion." *Id.* at \*4-5. In some instances, more weight may be given to the "other"

medical source if that source has seen the individual more often than the treating source, and provided better supporting evidence and explanation of their opinion. *Id.* at *5.

The ALJ noted physical therapist John Breuer's opinion that Ms. Roberts was in poor physical condition and "at medium risk for future medical problems," and stated that this opinion was inconsistent with "objective and physical exam findings," and Ms. Roberts' own activities. Admin. R. 37. Ms. Robert's argument pertaining to Mr. Breuer states "nowhere in the entirety of her decision did the ALJ grapple with the fact that plaintiff's activities are sporadic, sub-sedentary and nonsustainable." Pl.'s Op. Br. 17.

The record before the Court shows that Ms. Roberts' physician referred her to Mr. Breuer for a work capacity evaluation. Admin R. 388. Mr. Breuer made the following concluding observations:

> Anna completed most of the functional tests in the Work Capacity Evaluation. She was pleasant and cooperative throughout the testing. No inconsistencies were observed in this testing. She demonstrated positive signs of competitive test performance and appeared to put forth her best effort during this evaluation. This evaluation is considered valid.
>
> Capacities as demonstrated on this evaluation today indicate that Anana Roberts, based on maximum effort and endurance testing is function at the LIGHT level with maximum capacity of 17# [sic] (According to the Physical Demand Characteristic of Work Level) [sic] Client reported pain level "5-6" prior to testing and "7-8" after testing.

Admin R. 390 (emphasis original). Contrary to Ms. Robert's assertion, this conclusion does not support a finding that Ms. Roberts can only perform "sub sedentary" work. Further, while Mr. Breuer's report contains a document entitled "functional activities," which indicates two hours per day of standing, sitting and driving "tolerance," the report contains no explanation or discussion of these statements. *Id.* at 389. Mr. Breuer clearly concluded that Ms. Roberts could

Page 11 – **REPORT & RECOMMENDATION**

perform light work. *Id.* at 390. The ALJ concluded that Ms. Roberts can perform "light" work, with further limitations in pushing and pulling overhead. *Id.* at 34. Ms. Roberts, therefore, fails to show that the ALJ omitted Mr. Breuer's concluding opinion to her detriment.

### C. Claimant's Mother, Jessica Bittner

Ms. Roberts submits that the ALJ improperly rejected her mother's statements that Ms. Roberts engages in limited housework, has limited ability to walk, and cannot remain in one position. Pl.'s Op. Br. 25.

The ALJ must give "germane" reasons for rejecting lay testimony, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), and here may reject lay testimony to the extent it is consistent with similar testimony properly rejected. *Molina*, 674 F.3d at 1114. But, such analysis applies to commensurate portions of testimony. *Dale v. Colvin, Comm'r Soc. Sec.*, __ F.3d __ (9th Cir. May 19, 2016) (available at 2016 WL 2909237 at *4). Here, the ALJ did not reject limitations testified to by Ms. Bittner that differed from those testified to by Ms. Roberts. Therefore, Ms. Roberts points to no reversible error.

### D. Residual Functional Capacity Finding

Ms. Robert's challenge to the ALJ's RFC finding broadly asserts that the ALJ did not properly follow an administrative opinion addressing fibromyalgia. Pl.'s Op. Br., 26 (citing Soc. Sec. Ruling 12-2p § VI.D., available at 2012 WL 3104869). The Commissioner's ruling rehearses fibromyalgia diagnostic criteria, and states the Agency pays particular attention to the longitudinal record in fibromyalgia claims because of the waxing and waning of symptoms associated with the condition. "Soc. Sec. Ruling 12-2P; Titles II and XVI: Evaluation of Fibromyalgia," (available at 2012 WL 3104869 at *2-3, 5). The ruling clearly states that analysis of an alleged fibromyalgia impairment proceeds under the same regulatory ambit as any

Page 12 – **REPORT & RECOMMENDATION**

other impairment. *Id.* at *5. No authority suggests that different legal standards apply to analysis of disability claim based upon fibromyalgia.

Ms. Roberts' argument is limited to the statement that her fibromyalgia is "disabling because it prevents her from being able to sustain work activity at even the sedentary level of exertion." Pl.'s Op. Br. 26. She does not further address the matter pertaining to the RFC analysis. Because Ms. Roberts has not established error in the ALJ's assessment of the medical and testimonial evidence above, she fails to separately establish error in the ALJ's findings that she could perform the indicated RFC.

### E. Vocational Expert's Testimony at Step Five

Finally, Ms. Roberts contends that the ALJ proffered an incomplete hypothetical question to the ALJ at step five in the sequential proceedings. Here, the Commissioner may use a vocational expert's testimony to meet his burden of showing that the claimant can perform work in the national economy and is therefore not disabled. 20 C.F.R. § 416.967(e). The ALJ's questions to the vocational expert at step five must include all properly supported limitations, but need not include limitations the ALJ found unsupported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 157, 1665-66 (9th Cir. 2001).

Ms. Roberts asserts that the ALJ should have included an "inability to sustain work activity over an 8-hour workday." Pl.'s Op. Br., 26. This assertion is based upon her own testimony and, she submits, that of physical therapist Mr. Breuer. *Id.* Because the ALJ properly assessed that testimony, as discussed above, Ms. Roberts does not now establish reversible error.

### RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be AFFIRMED. This Report and Recommendation will be referred to a district judge. Objections, if any, are due

Page 13 – **REPORT & RECOMMENDATION**

no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive their right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of July, 2016.

MARK D. CLARKE
United States Magistrate Judge